May it please the court, your honor, Benjamin Ramos on behalf of Mr. Holsey, appellate, I'd like to reserve two minutes. Your honor, I have only a few points of clarification I'd like to make. I think briefs address most of the issues, but there are a few factual matters that were not addressed and I wanted to stress that those are First, beginning with the legal point that Mr. Holsey's failure to register in this case within five days of his birthday did not undermine the purpose of the sex offender registration process. My respondent argues that Mr. Holsey's recidivism shows that he's unwilling to comply with parole conditions and that he's a risk to society. And I would say that factually that's not correct. There's an abundance of facts that have been cited previously that I want to cite now that show a pattern on Mr. Holsey's part of complying with the registration requirement. And yet there's an abundance of evidence that the trial court went through to show that your client had a miserable history of recidivism. He violated parole routinely over a course of more than 20 years. In fact, the reason that the police here discovered that he had failed to register was because there was another complaint filed by a woman where he had been mowing her lawn and that was peaking at her windows. That is correct, your honor. I would distinguish the type of recidivism though. The district judge looked at this and found that his parole violations, that his recidivism consisted mainly of parole violations. And she pointed to she could find work for him being under influence of a controlled substance. There was no violence. There was no felony recidivism. And that's talked about in the case law. What about the fact that your client was discharged from parole for reaching the statutory maximum amount of time that he could be incarcerated? And therefore, even though he didn't really feel like he was ready to go, they discharged him because they had to. What does that lead to? Where does that affect Janice? I mean, I sat on the district court, and I looked at this particular situation. He violates his parole. He doesn't really get discharged from parole because he does a good job. He has to go right to the end, and they discharge him because they run out of time. He does register, but he doesn't register often. I mean, he registers sometimes. Sometimes he doesn't. And he's got 30 heavy violent crimes that he has in his record. Well, then the ultimate part of that is reading all of that and going through it. Then I have to look at that through the glasses of end time. I would say that Mr. Wallet has documented in the record that he had a long history of drug and alcohol problems. And I'm not sure if he's getting treated for that, but I think a lot of his parole violations and recidivism are related to them and his mental health problems. In 2009, he went to the police station in Roosevelt and gave a new address there, showing that he was intending to comply with the registration requirement. And when he was later contacted by the police officer regarding a complaint for him bothering a woman, he told them where he was living. He gave them the correct registered address. So there's no evidence that he was trying to hide from surveillance or evade the police. Well, he told them that he hadn't registered. He knew he hadn't registered, and he was waiting for them to send him a reminder. And that's what he said. I agree. That's what he said. He didn't do anything for two weeks. The trial court took into account the drug history and alcohol abuse. He says the fact that he is unemployed, has a history of drug abuse, alcohol abuse, I think his chances and prospects of rehabilitation are general. So what's wrong? What makes that an unreasonable finding of fact by the state court? Well, for one thing, the state court didn't address the issue that I'm trying to focus on here regarding the violation of the registration requirement to register within five days of your birthday and a separate requirement to register after a change of address. And that's a huge distinction based on both state and federal case law. And that was just glossed over by the sentencing judge. He made really no recognition of that factor, and he focused almost entirely on Mr. Halsey's variable. Those other two cases were probably the two cases that are most in your favor, which is Carmody and Gonzales. But in both of those cases, he took into account both of those cases, and said they were distinguishable. California Court of Appeals says we looked at both of those. We agree with the trial judge on that. So where's the unreasonable finding of fact? Where's the violation of clearly established Supreme Court law? It comes with the recognition of the argument that's imposed in this case, the 28-year life sentence imposed on someone who commits a crime that's regarded as no more serious than overtime parking. That's the violation right there. But the California Supreme Court has issued a decision since Gonzales and Carmody saying that you take into account all of the facts. And that's exactly what the trial judge did here, went through all of the probation violations, all of the parole violations. The times when he was let out of jail and was taken back into jail the following day or two weeks later or a month later. Those records don't come close to the kinds of records that Carmody and Gonzales had. And that really can't be disputed, Your Honor. That can't be disputed. But I would say the severity of his noncompliance with parole is certainly, if you can't dispute that the record is quite different in Gonzales and Carmody, those cases don't do any good for you. So now you're going to have to tell us what Supreme Court case this California decision violates. No, I think that Carmody and Gonzales do help in these cases. You just want me to get you understood that those records were quite different. Since the California Supreme Court has told us we take into account the record, those records were very different from this case. Your Honor, I have a long history of parole violations and just an inability to follow any rules, whether it's to alcohol or drug. He isn't following the rules. But he is. The record shows that he was trying to comply when he went to the police station in 2005 and 2006 and registered in 2007. The record, not the courthouse, it ain't. I think he was back in jail for a parole violation of some sort, but he was making an effort to comply and he was trying to obey, but not complying with the terms of his release from prison for other offenses. That's why you said that he was in prison repeatedly. Well, as far as I can tell you, he's violating parole for some reason. The district court said two for control, being under the influence of controlled substance. So that's different from committing armed robberies, burglaries, other serious felonies. He has a drug and alcohol problem that's documented in the record, and that's his major problem. He's not going on enough of the facts to explain, but he does have a drug and alcohol problem, and he's been dealing with it for a long time, and his recidivism has not been violent. There's been no felony recidivism since I think the early 2000s. And he's doing what you're asking him to do. What's the relief are you seeking from us? I think that the district court should declare that his sentence violates the Eighth Amendment and reverse the decision of the lower court. I understand that. So, Matt, I mean, if you've seen the conclusion of the little blog, what would you say? What would you say? I assume that we accept your argument. We'll go back and do it again, but we have to come up with what we think is a reasonable, and I assume that we accept your argument that this is not reasonable. What would the effect look like? Would we say, let's go back, try again, and we'll see what the past lies are. Would we say a sentence no more than X years? I'm just wondering what kind of relief are you specifically seeking? If there is an X in there, what do you think the X should be? If we say, you know, this is not reasonable, but, you know, it's a lesser sentence, what do you think about doing something once more? What would that be? That is a very difficult question to answer. I don't think there's a very good answer. We're going to go over time. Let me add, I think the court, I think the best the court can do is say that this particular sentence violates the amendment and kind of try again. And we sit there and say, man, why would you try? You'll file a sentencing charge. And I got handed like that from federal courts. I think those guys are crazy. They say, you know, I did my best. I think this is reasonable. And they don't think it's reasonable, but if they say try again, I'm strong. You know, I don't think I've relied on the prior presses as soon. You know, I think some of the points the judge makes is a reasonable sentence. Does he need to give us some guidance as to what we think would be reasonable? I mean, I don't know how to carry out that kind of thing. It came to me, you know, that this thing is not as reasonable. We disagree in time. We don't think we need to say what we thought, what we think would be a reasonable sentence case. If we have to say, don't you think you owe it to us to tell us what you think we should say? Well, if we have to try again, would you tell us what would be the sentence you would assume would be reasonable? I think it would have to be determined under state law, given Mr. Schultz's priors. I haven't calculated that myself. I don't know the exact number of years. I don't know the exact number of years that would be reasonable. I can't give you that now. But I think that it could be determined. Okay. Okay. We'll hear from Mr. Schultz. Good morning, Your Honors. Kenneth Sekoler from the state. The question here is whether a fair-minded jurist under Section 22-254D could find that the sentence was not grossly disproportionate under the very general gross disproportionality principle that was described by the Supreme Court in Longyearbyen v. Andrade, who said that the only guiding principle under Section 22-254D is that the gross disproportionality principle is applicable to sentences for terms of years and that its precise contours are unclear. The fact in question is almost a very amateur reference. It's a very amateur register. It's not anything that the real world consists of. It doesn't. It doesn't work. However, it's a very, very beautiful overstatement. Is there anything else? Yes. I have two responses to that. One is that it goes to a more important state goal, which is to keep track of sex offenders, and if defendants are routinely failing to renew their annual registrations, the state's evidence goes on hold. The other is that in the case of regulatory offenses, you know, they always serve an important government purpose, but in Longyearbyen, I thought that in the case of killings, it is failing to register, so there might actually be some police nature as better than playing it down and pointing at somebody and hitting somebody in the head or engaging him. There's a long list of things that people can do to each other that seem to be enhancing or facilitating him to register in court for this registration, maybe. I would agree with that, Your Honor, but when we look at the nature of the offense here, as the California Supreme Court said, and Coley and Edison's court did in the previous Gonzales case, we look not just at the offense in isolation. Excuse me. Pardon me. I think it was okay. Excuse me. I apologize. Yes, it was extremely easy to understand. That's fine. I accidentally asked you good advice, but you're saying yes, sir. Yes, sir. All right. Well done. It was an exceptionally well-written opinion. I think that it came to the core of my argument. I pointed out, as I did in the brief, in what ways this case is distinguishable from Gonzales, which is important, some of those distinctions during the argument with my opposing counsel. First of all, Mr. Mulsey's record was much worse than Mr. Gonzales' record. We have four prior felony convictions, six misdemeanors, and nine probation violations, one of which was one of those misdemeanors. A question about that. So the trial court here finds that he is a recidivist, and for purposes of sort of the question of recidivism, do we take into account parole violations as opposed to convictions? No, I think I would make a slight definitional difference. I think when we're talking about recidivism, and I've never briefed, we haven't briefed the exact definition, I think that parole violations are part of the overall picture of ability to follow the law. It's important in a case like this, because if we're going to look at convictions, then his last conviction, as far as I can tell, was in 2002. That was her failure to register. Yes. And we have to go back eight years earlier, so 1994. That was his conviction for anointing. That's anointing. That's correct, Your Honor. And he was, that was his second failure to register by conviction, by the way. He was sentenced to five years for it, but his term didn't expire until 2009 because it was on the sentence for that conviction that he had five separate parole violations, including one that he committed the day after being released. So in this case, the length of time between his most previous conviction and the instant conviction does not mitigate his culpability because he was in and out of prison for almost all of that time. Do we know what parole violations are for? I thought it was just your brief wasn't there for alcohol. I'm talking, that's what the rest of us use the whole system of those in, but we don't get a lot of detail as to what they're for. And some of them are very quick. You should find out one of them is the day after he's released. All right, Matt, what do you think? If we're talking about those fives or since the last conviction, one of those was for disorderly conduct under the influence of drugs or alcohol, and the record doesn't show what the other ones were for. In terms of the previous five parole violations, I recall that one of them was for the misdemeanor, for an act that ended up in a misdemeanor conviction as well. And this was where he went up to a 10-year-old boy and lowered his pants and said, I'm going to make you suck my penis like an ice cream cone the way I did to the other kids. It's a misdemeanor conviction. The way I understand the record is his parole was revoked for that one, and he got a misdemeanor violation. So that is one of the nine. He was acquitted of the felony charge in that case. I don't recall that. That's in 1994. Correct. Yes, I believe that's correct. I believe he was acquitted of the felony charge. I mean, there's no doubt that this is not a law-abiding crime. And he's done some very respectable things. There's no doubt about it. But as I think just by these questions of going down, a lot of the stuff is actually known as failure to arrest, or failure to abide by conditions of parole. And, you know, as you all know, I'm still obsessed with Angela. There's a lot of cases like that. You have to talk to somebody who just can't keep his nose clean, just can't show up for supervised police, just can't talk to his probation officer, parole officer, probation officer, whatever. But there's three different kinds of somebody who goes out and does crimes in the real world. And, you know, the incident you mentioned, and there are certainly incidents in this past where he has done illegal stuff in the real world. It's nasty. But there are, as I think the previous question pointed out, there are a lot of time to go. There are a lot of time to go. Most of what's happened, most of what has arisen on the system recently is just not complying with the requirements of registration or probation or whatever. So, you know, I haven't seen where that's really such bad stuff Your Honor, I think it's all part of the same picture with Mr. Holstein. It's part of an all-around contempt for following the rule of law. This was an intentional violation here, as the district court found, which contrasts with the violations in Carmody and Gonzales. And it's significant that he had two prior violations for failure to which he had been sentenced to five years. So if anyone should have been following this rule, he should have his many parole violations figure into that. And I want to also look at his reaction after the misdemeanor conviction. For those words he uttered to the 10-year-old child about morally copulating him when he said to the parole department, this is bullshit. You can't do anything to me. This is all part of a larger pattern of contempt for following the rule of law. And I think that this particular violation fits into that, and it really affects the character of this violation. And that's why we have to do, as Gonzales and his colleagues said, look at the overall picture. And getting back to one point about parole violations, they don't know that parole violations count technically in the definition of recidivism, but they can be considered in evaluating an Eighth Amendment disproportionality claim. They were specifically mentioned, for instance, by the Supreme Court in the Ewing v. California case, which referred to Mr. Ewing's felony violations and misdemeanor violations and crimes committed while on parole. To sum up, there are four important aspects that differentiate this case from Gonzales. One is his record. Second is the fact that his record consists of two prior convictions for violating this law. Third is the deliberate nature of his violation as compared with the violations in Carmody and Clough and Gonzales, which were merely negligent oversights. And second and third, or rather fourth, which I explained in detail in the brief, is the change in the understanding of the nature of this crime, which was explained by the Ewing v. California Supreme Court in Coldy, subsequent to this court's Gonzales decision, when the court explained that evaluating the seriousness of this particular offense and the failure to annually renew, the evaluating overall circumstances, including whether it was a deliberate violation and including the defendant's prior record. Thank you. Thank you, Your Honors. Your Honor, it's time to take away this order. Thank you, Your Honor. Your Honor, regarding counsel's comment that the violation in this case was intentional, that is not in the state court record. That comes from the district court judge's finding, which is not what's under review and under it. But as for contempt of the law, as I mentioned, I'm sorry, counsel mentioned that Mr. Ainsley got an outcry, which I have the prerogatory to use today. It's based on district court's finding, but I don't understand what you said in the file, so I don't weigh out the district court as much evidence as the Supreme Court. I think that the court I'm talking about, the review of the state court decision, not containing the facts, nothing else is over with. I think there's no finding on that. And the district judge reads the finding. Do we take that finding as a quote-unquote, that the state court didn't find? I think there is deference there, Your Honor. I think there is some deference. But I just wanted to point out for the state court record, it's been reviewed by the trial court and the court of appeal, and there was no finding. In fact, the court has recognized that this violation can occur negligently, and that's an oddity in the law, that someone can be convicted and receive this harsh sentence for just a negligent failure to register, which is bizarre. I think that would be just a case if there were no finding in the state court, and then the district judge finds this was a negligent or accidental or inadvertent violation. Then you have a perfect case, I think. But in this case, the district judge, the federal district judge, shows him the finding that the state court didn't make. So we said, I don't know what you would do with that. Why do you ask me that as a delegate? I'm sorry. It's an intentional violation, right? Well, I think it's just a nice court finding, at least that's my point. The judge did find that. He says, I'm waiting to get out of my life. I don't know why I'm waiting to get out of my life. It's not that he's an official of intentionality. It's sort of my saying, I know I'm supposed to get paid my taxes, so I have a tax return, but I wait for the IRS to send me a reminder. It doesn't mean it's unintentional. It just sounds like he was able to get away with it, but he got a reminder, and it's not a timely reminder. I mean, if he said, I forgot, or I believe it or not, but saying I was waiting for a reminder is almost an official of intentionality as well. If he did it that way, I can see that. Well, he doesn't describe it that way. Do you hear that before? Well, he waits for something. If you don't, you know, he's not the first one to be waiting for something. It's difficult. That issue is difficult because it wasn't addressed. There was no defense presented, no evidence of trial on that issue, so it's hard to reconstruct how the court group is in defense's favor, but once again, Mr. Olson has a long history of mental problems. In fact, as I recall on record, he was diagnosed as psychotic at one point. Perhaps that should have been explored, but it's not a good excuse to say that when I was waiting for someone to remind me to do this, he'd been there before. However, it's still, even if that violation is considered to be intentional, it's still not the kind that implicates all the public safety concerns in the three strikes law. He's not evading police. He's not giving incorrect information, false IDs. He's not hiding from them. He's telling the police where they contacted him, I live at my registered address, and that's where they arrested him. So the counsel's argument, I think, gets into a point where Mr. Olson is being basically punished for his recidivism, which Carmody talked a lot about in place, and that violates the Eighth Amendment. You're just punishing him looking at an awful record of his past. That violates the Eighth Amendment, particularly where the trigger in defense that triggers the consideration is one that's just a technical, harmless, regulatory violation that doesn't implicate any public safety concerns. I think calmness is going a little too far. I would say it's calmness. I mean, the state has found that this is calmness, and the state's report has said it's calmness. Well, it's a clear calmness. But anyway, I think we understand the argument. I think you understand the argument. I think you understand the argument.
judges: Kozinski, Bybee, N.R. Smith